UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JEFFREY ZIBBELL, et al.,

        Plaintiffs,

                                                  Case No. 2:07-cv-96

v.                                           HON. R. ALLAN EDGAR

JENNIFER GRANHOLM, et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

        Plaintiffs Jeffrey Zibbell and Cheryl Zibbell filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Michigan Governor Jennifer Granholm, Citizens Insurance Company of America ("Citizens"), the State Bar of Michigan, the Michigan Department of Human Services (DHS), the Michigan Department of Community Mental Health, Marquette County Resource Management, Alger-Marquette Community Action Board, Upper Peninsula Power Company, Dale Schnieder, Stephen Enright, Marvin Plotezka, and Keith Greenwald. For the reasons set forth below, the undersigned now recommends dismissal of Plaintiffs' complaint in its entirety.

        Plaintiffs' complaint is largely incoherent, but they appear to be asserting that they have been mistreated by Defendants for the past 20 years. Plaintiffs claim that they are both disabled, that Cheryl cannot lift more than ten pounds, and that Jeffrey suffers from a fractured spine. Plaintiffs state that on August 5, 1987, Jeffrey was injured while on his way to work when his motorcycle was struck by a car driven by Gina Calleja, who had Citizens Insurance. Jeffrey became disabled as a result of the accident. Plaintiffs claim that the State of Michigan failed to activate their

COBRA benefits, nor did it collect third party liability payments as required by state law.  Once the disability payments began, the State of Michigan denied Plaintiffs all assistance they were entitled to receive.  Jeffrey's lawyer was negligent and failed to appear during mediation, which Plaintiffs discovered when they received a verdict of $22,000 for Jeffrey's disability.  The attorney then charged Plaintiffs over $70,000 in fees and obtained a court order to take all of Plaintiffs' property to pay the debt.  Plaintiffs borrowed money to pay for the trial transcript, but their attorney refused to appeal the case.  Plaintiffs then borrowed more money to hire an appellate attorney, who committed fraud on them.  Plaintiffs then hired a legal malpractice attorney, who committed malpractice and then died.  During Jeffrey's Social Security Administration hearing, the Administrative Law Judge heard his claims of medical and legal malpractice.  Plaintiffs claim that they have proof of perjured testimony, x-ray fraud, misuse of a notary, illegal splitting of fees, trust account fraud, misuse of funds, and obstruction of justice.

Plaintiffs allege that they have been forced to live without heat for over a year, the electricity to their home was shut off on May 18, 2007, the water has been disconnected, and Cheryl has been ordered to care for Jeffrey despite the fact that she is disabled.  Plaintiffs have been told to use ice and coolers for their food even though Cheryl cannot lift over 10 pounds.  Plaintiffs claim that their income is 71 percent below the Federal Poverty Level for a disabled couple.  Plaintiffs further state that DHS has denied them any assistance, and has told them to join a church in order to obtain assistance.  Plaintiffs contend that their house has been condemned and that Defendant Plotezka told them they could not get any assistance with needed home repairs, such as a new roof, new siding, new windows, and insulation.  Defendant Plotezka told Plaintiffs their house was so airtight that it was harmful, even though it is drafty and cold in the winter.  Plaintiffs were allowed

to receive some free light bulbs, but Plaintiffs' gas had to be shut off due to toxic carbon monoxide levels.

Plaintiffs state that they are expected to pay their mortgage, insurance, taxes, mortgage interest, telephone, utilities, medical expenses, automobile maintenance, food, clothing, furniture, and miscellaneous expenses all on $1,090.00 a month. Plaintiffs have suffered additional injury from being forced to heat with wood, having to lift and carry water while living in tents, and having to shovel snow, all of which violates medical restrictions. In addition, Plaintiffs were forced to relocate after being evicted several times because of lack of assistance. Plaintiffs contend that State Administrative Law Judges have told them to go to Circuit Court in order to pursue relief. Plaintiffs complain that they have wasted extensive time and money on state hearings addressing problems caused by state agencies.

Plaintiffs state that they cannot obtain the USDA-RD loan they qualified for due to the fact that their house has been condemned and the state refuses to comply with their disability income issues. Defendant Greenwald denied their loan in 1999, which caused Plaintiffs to live in a tent until they bought their current condemned house. Defendant Greenwald told Plaintiffs that it did not matter if they had good cause for their bad credit, they needed to fix their credit and then come back and reapply in a few years. Plaintiffs have fixed their credit, but continue to have financial difficulties. Plaintiffs had to "take the $24,000 owing" on the condemned house from the $71,000 loan for the new house, and pay to demolish the condemned house and have it cleared away, which only left $20,000 to build the new house on Plaintiffs' property. Plaintiffs claim that Defendant Greenwald knew they were disabled crime victims who had their credit intentionally damaged and that they had no place to live when he denied their loan application.

Plaintiffs allege that when Defendant Greenwald denied their initial loan request, they were being evicted from a condemned farm house in Germfask, where they had been paying $300 a month for no furnace, no drinking water and no electricity. Plaintiffs were denied all food and other state assistance. Plaintiffs' entire disability income was just enough to pay for Jeffrey's medications. In addition, Jeffrey was required to make monthly trips to the University of Michigan Medical Center for medical care. Plaintiffs' bank "caused bounced checks that continued with fine after fine until they had an entire month's check used for their own gain so that they could arrest Cheryl and give her additional fines." Plaintiffs have been homeless twice and have had to live in a tent, with the state refusing all assistance that Plaintiffs should have received.

Plaintiffs allege that DHS in Schoolcraft County told them that it was not against the law to live in a car with a minor child in the summer, so that they could deny Plaintiffs' request for assistance. Plaintiffs' son had to get ready for school by jumping in the river to wash and heating a can of corn over the campfire. Plaintiffs' address was Post #3 at the campsite and they had to pay $300.00 in rent because they qualified for assistance that they never received. Plaintiffs state that they became homeless in Schoolcraft County after being evicted from their home of 15 years in Wayne County. As soon as the "landlord/child abuser/stepdad" got Plaintiffs' entire $12,000.00 RSDI disability back pay and illegally withheld inherited stocks, he committed perjury to evict Plaintiffs for rent arrears. Plaintiffs contend that this person is a Masonic member who knows judges, police and other officials and had a "scam" set up on Plaintiffs. Plaintiffs further claim that this person "kidnaped" their minor son after abusing him behind Plaintiffs' backs his entire life, but that the "Northville Psychiatric Hospital Probate Court" ordered Plaintiffs' son returned to them. However, the "landlord/child abuser/stepdad" again kidnaped Plaintiffs' son when they became homeless in Germfask due to negligent assistance denials.

Plaintiffs state that their daughter was caught filing false reports of abuse to Child Protective Services, and that she admitted it was to get back at Plaintiffs for disciplining her. Plaintiffs contend that the State of Michigan helped the "landlord/child abuser/stepdad" injure their children and get away with stealing their money. The Michigan Department of Treasury also allowed the "landlord/child abuser/stepdad" to cheat on his taxes for several years and took lump sums of Plaintiffs' money. Plaintiffs' daughter was then "locked up" in a mental institution by the "landlord/child abuser/stepdad" so that he could get her social security benefits. Plaintiffs allege that they have had to sell their personal possessions and wedding rings, return all gifts, and pawn everything they could in order to survive because they were denied food stamps, Medicaid and other state assistance.

Plaintiffs state that Defendants violated their rights to equal protection, due process, free exercise of their religious beliefs, and to be free from cruel and unusual punishment. In addition, Plaintiffs claim that they were subjected to involuntary forced servitude. Plaintiffs seek damages.

The court has granted Plaintiffs' leave to proceed *in forma pauperis* in light of their indigence. Under the provisions of federal law, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the court is required to dismiss any action brought under federal law *in forma pauperis* if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2). An action may be dismissed as frivolous if "it lacks an arguable basis either in law or in fact." *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Accordingly, an action is frivolous within the meaning of section 1915(e)(2) when it is based on either an inarguable legal conclusion or fanciful factual allegations. 490 U.S. at 325. A complaint fails to state a claim upon which relief can be granted when it is clear

that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).  In applying these standards, the court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the undersigned concludes that Plaintiffs' *pro se* action is indisputably meritless.

Initially, the undersigned notes that Plaintiffs may not maintain a § 1983 action against the Michigan Department of Human Services or the Michigan Department of Community Health.  Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826  (6th Cir. 1993).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In addition, the State of Michigan (acting through the Michigan Department of Human Services and the Michigan Department of Community Health) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).  Therefore, the Michigan Department of Human Services and the Michigan Department of Community Health are properly dismissed from this action.

The undersigned further recommends dismissal of Plaintiffs' claims against the Marquette County Resource Management or the Alger-Marquette Community Action Board.  These

defendants do not exist as separate legal entities; they are simply agents of the county. *Vine v. County of Ingham*, 884 F. Supp. 1153, 1158 (W.D. Mich. 1995) (citing *Hughson v. County of Antrim*, 707 F. Supp. 304, 306 (W.D. Mich. 1988), and *Bayer v. Almstadt*, 185 N.W.2d 40, 44 (1970)). Marquette County may only liable under § 1983 when its policy or custom causes the injury. *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978). Plaintiffs' allegations are vague and conclusory. Plaintiffs' complaint does not allege that Marquette County operated pursuant to an unconstitutional policy or custom. Nor does the complaint allege that Marquette County was responsible for any of the actions or inactions taken by Defendants Marquette County Resource Management or the Alger-Marquette Community Action Board. Even if employees of the Marquette County Resource Management or the Alger-Marquette Community Action Board did violate Plaintiffs' constitutional rights, they cannot be held responsible for their conduct under Section 1983 simply because the county employed them. *Watson*, 40 Fed. Appx. at 89 (*citing Monell*, 436 U.S. at 691, 98 S. Ct. at 2036 and *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997), *cert. denied*, 523 U.S. 1118, 118 S. Ct. 1796 (1998)).

In addition, the undersigned notes that Plaintiffs' claims against Defendants Greenwald and Citizens are barred by the statute of limitations. This court may, on its own motion, apply the statute of limitations to a § 1983 claim by a pro se litigant. *See Hardin v. Straub*, 490 U.S. 536, 109 S. Ct. 1998 (1989); *Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir. 1995); *Redd v. Gilless*, 857 F. Supp. 601, 605 (W.D. Tenn. 1994). The Sixth Circuit has held that sua sponte dismissal is appropriate under § 1915(e)(2) when a complaint bears an affirmative defense such as the statute of limitations and is therefore frivolous on its face. *Fraley v. Ohio Gallia Cty.*, No. 97-3564, 1998 WL 789385, at *1 (6th Cir. Oct. 30, 1998); *Day v. E.I. Dupont de Nemours and Co.*, No. 97-6233, 1998 WL 669939, at *1 (6th Cir. Sept. 17, 1998). Federal courts apply state personal injury statutes of

limitations to claims brought under § 1983. *Wilson v. Garcia*, 471 U.S. 261, 276, 105 S. Ct. 1938, 1947 (1985); *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 180-181 (6th Cir. 1990). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(8); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir.) (per curiam), *cert. denied*, 479 U.S. 923, 107 S. Ct. 330 (1986); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, *1 (6th Cir. Feb. 2, 1999). Plaintiffs appear to be asserting that Defendant Citizens violated their rights with regard to their handling of Jeffrey's accident in 1987 and that Defendant Greenwald improperly denied their loan request in 1999. Plaintiffs filed this action on May 21, 2007, more than seven years after any alleged misconduct by Defendants Citizens and Greenwald. Plaintiffs fail to allege any circumstances which would toll the statute of limitations. Therefore, Plaintiffs' claims against Defendants Citizens and Greenwald are properly dismissed.

Plaintiffs state that Defendants violated various statutes, including 42 U.S.C. § 119 Homeless Assistance, 42 U.S.C. § 94 Low-Income Home Energy Assistance, and 42 U.S.C. § 76 Age Discrimination, as well as 24 C.F.R. "Housing and Urban Development" and 7 C.F.R. "Agriculture." However, as noted above, Plaintiffs seek damages as the sole request for relief. The undersigned notes that none of the above statutes includes a provision for damages. Therefore, these claims are properly dismissed.

Plaintiffs also claim that Defendants' conduct violated 42 U.S.C. § 126, which is entitled Equal Opportunity for Individuals with Disabilities. This statute encompasses Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131. Title II of the ADA provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §

12132. Therefore, to state a claim under the ADA, Plaintiffs must show that they are "qualified person[s]," that they have a "disability," and that they have been denied a "service, program, or activity" of the state. In the ADA, the term "disability," with respect to an individual, is defined as: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Plaintiffs claim that they are both disabled, that Cheryl cannot lift more than ten pounds, and that Jeffrey suffers from a fractured spine. Plaintiffs state that, as such, they are unable to work. Plaintiffs further state that Defendants knew of their disability, but denied them needed services, despite the fact that they qualified for such assistance under federal guidelines. Viewing the allegations in the complaint in the light most favorable to Plaintiffs, as the undersigned is required to do, Plaintiffs' ADA claims appear to be nonfrivolous and should not be dismissed at this time.

Finally, with regard to Defendants Granholm, Schnieder and Enright, the undersigned notes that Plaintiffs have failed to allege any specific facts showing that they violated Plaintiffs' constitutional rights. Therefore, the undersigned recommends that Plaintiff's claims against Defendants Granholm, Schnieder and Enright be dismissed.

Plaintiffs' have also filed a motion for summary judgment (docket #6). However, because Defendants have not been served in this case, such a motion is premature and is properly denied. With regard to Plaintiffs' motions for injunctive relief (docket #11 and #12), they appear to be seeking expedited decision on the merits of their claims. However, because Defendants have not yet been served, such a decision is premature and is properly denied.

In conclusion, the undersigned recommends that, with the exception of Plaintiffs' ADA claims, Plaintiffs' complaint be dismissed as frivolous. Should the court adopt the report and recommendation in this case, Plaintiffs' complaint should be served on Defendants Michigan Department of Human Services, Michigan Department of Community Mental Health, Marquette County Resource Management, Alger-Marquette Community Action Board, Upper Peninsula Power Company, Marvin Plotezka, and Keith Greenwald with an instruction to address Plaintiffs' ADA claims. It is further recommended that Plaintiffs' motion for summary judgment (docket #6) and motions for injunctive relief (docket #11 and #12) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley  
      TIMOTHY P. GREELEY  
      UNITED STATES MAGISTRATE JUDGE

Dated: July 23, 2007