UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JEFFREY ZIBBELL and
CHERYL ZIBBELL,

        Plaintiffs,

                                  Case No. 2:07-cv-96
v.                                    HON. R. ALLAN EDGAR

JENNIFER GRANHOLM, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

        Plaintiffs Jeffrey Zibbell and Cheryl Zibbell filed this *pro se* civil rights action
pursuant to 42 U.S.C. § 1983 against defendants Michigan Governor Jennifer Granholm, Citizens
Insurance Company of America, the State Bar of Michigan, the Michigan Department of Human
Services (DHS), the Michigan Department of Community Mental Health (DCH), Marquette County
Resource Management, Alger-Marquette Community Action Board, Upper Peninsula Power
Company (UPPCO), Dale Schnieder, Stephen Enright, Marvin Plotezka, and Keith Greenwald.
After an initial review of the complaint, defendants Jennifer Granholm, Citizens Insurance Company
of America, the State Bar of Michigan, Dale Schnieder and Stephen Enright were dismissed.  The
remaining claim is for an alleged violation of the Americans with Disabilities Act (ADA).

        Plaintiffs claim that they are both disabled.  On August 5, 1987, Jeffrey was injured
in a motorcycle accident.  Jeffrey became disabled as a result of the accident.  Plaintiffs allege that
defendants have denied assistance plaintiffs were entitled to receive.  Plaintiffs have alleged that all

the attorneys that have represented them in the past have committed malpractice or committed fraud causing them additional hardship.

Plaintiffs allege that they have been forced to live without heat for over a year, the electricity to their home was shut off on May 18, 2007, and their water has been disconnected. Plaintiffs further state that DHS has denied them any assistance, and has told them to join a church in order to obtain assistance.  Plaintiffs contend that their house has been condemned and that Defendant Plotezka told them they could not get any assistance with needed home repairs, such as a new roof, new siding, new windows, and insulation. Defendant Plotezka told Plaintiffs their house was so airtight that it was harmful, even though it is drafty and cold in the winter.  Plaintiffs were allowed to receive some free light bulbs, but Plaintiffs' gas had to be shut off due to toxic carbon monoxide levels.

Plaintiffs state that they are expected to pay their mortgage, insurance, taxes, mortgage interest, telephone, utilities, medical expenses, automobile maintenance, food, clothing, furniture, and miscellaneous expenses all on $1,090.00 a month.  Plaintiffs have suffered additional injury from being forced to heat with wood, having to lift and carry water while living in tents, and having to shovel snow, all of which violates medical restrictions.  In addition, Plaintiffs were forced to relocate after being evicted several times because of lack of assistance.

Plaintiffs state that they cannot obtain the United States Department of Agriculture Rural Development loan they qualified for due to the fact that their house has been condemned and the state refuses to comply with their disability income issues.  Defendant Greenwald denied their loan in 1999, which caused Plaintiffs to live in a tent until they bought their current condemned house.  Defendant Greenwald told Plaintiffs that it did not matter if they had good cause for their bad credit, they needed to fix their credit and then come back and reapply in a few years.  Plaintiffs have

fixed their credit, but continue to have financial difficulties.  Plaintiffs had to "take the $24,000 owing" on the condemned house from the $71,000 loan for the new house, and pay to demolish the condemned house and have it cleared away, which only left $20,000 to build the new house on Plaintiffs' property.  Plaintiffs claim that Defendant Greenwald knew they were disabled crime victims who had their credit intentionally damaged and that they had no place to live when he denied their loan application.

Plaintiffs allege that when Defendant Greenwald denied their initial loan request, they were being evicted from a condemned farm house in Germfask, where they had been paying $300 a month for no furnace, no drinking water and no electricity.  Plaintiffs were denied all food and other state assistance.  Plaintiffs' entire disability income was just enough to pay for Jeffrey's medications.

Plaintiffs allege that DHS in Schoolcraft County told them that it was not against the law to live in a car with a minor child in the summer, so that they could deny Plaintiffs' request for assistance.  Plaintiffs' son had to get ready for school by jumping in the river to wash, and by heating a can of corn over the campfire.  Plaintiffs' address was Post #3 at the campsite and they had to pay $300.00 in rent because they qualified for assistance that they never received.  Plaintiffs state that they became homeless in Schoolcraft County after being evicted from their home of 15 years in Wayne County.  As soon as the "landlord/child abuser/stepdad" got Plaintiffs' entire $12,000.00 RSDI disability back pay and illegally withheld inherited stocks, he committed perjury to evict Plaintiffs for rent arrears.  Plaintiffs contend that this person is a Masonic member who knows judges, police and other officials and had a "scam" set up on Plaintiffs.  Plaintiffs further claim that this person "kidnaped" their minor son after abusing him behind Plaintiffs' backs his entire life, but that the "Northville Psychiatric Hospital Probate Court" ordered Plaintiffs' son returned to them.

However, the "landlord/child abuser/stepdad" again kidnaped Plaintiffs' son when they became homeless in Germfask due to negligent assistance denials.

Plaintiffs state that their daughter was caught filing false reports of abuse to Child Protective Services, and that she admitted it was to get back at Plaintiffs for disciplining her. Plaintiffs contend that the State of Michigan helped the "landlord/child abuser/stepdad" injure their children and get away with stealing their money. The Michigan Department of Treasury also allowed the "landlord/child abuser/stepdad" to cheat on his taxes for several years and took lump sums of Plaintiffs' money. Plaintiffs' daughter was then "locked up" in a mental institution by the "landlord/child abuser/stepdad" so that he could get her social security benefits. Plaintiffs allege that they have had to sell their personal possessions and wedding rings, return all gifts, and pawn everything they could in order to survive because they were denied food stamps, Medicaid and other state assistance.

Defendants Michigan Department of Human Services, Michigan Department of Community Health, Marquette County Resource Management, and Upper Peninsula Power Company move to dismiss the complaint against them. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355. U.S. at 47). The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 988 F.2d at 638. While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Delorean*, 991 F.2d at 1240. "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

Plaintiffs and defendants Alger-Marquette Community Action Board and Marvin Plotezka move for summary judgment . Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477

U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

A hearing was held on March 4, 2008.  At the hearing plaintiffs argued that they were entitled to money from defendants because plaintiffs have disabilities.  Plaintiff Cheryl Zibbell stated that she has filled out application after application only to be denied, despite her entitlement to financial support.  Plaintiff Cheryl Zibbell alleges that she has been told that defendants do not have money for plaintiffs.  Plaintiff Cheryl Zibbell stated that if defendants do not have money it is not her problem because she is entitled.  Plaintiff Cheryl Zibbell believes that defendants are receiving money from the federal government specifically for the plaintiffs,  but are instead using it for other purposes.  Plaintiffs argue that they were denied disability benefits because of their disabilities.

42 U.S.C. § 126, which is entitled Equal Opportunity for Individuals with Disabilities, encompasses Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131.  Title II of the ADA provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Therefore, to state a claim under the ADA, Plaintiffs must show that they are "qualified person[s]," that they have a "disability," and that they have been denied a "service, program, or activity" of the state.  In the ADA, the term "disability," with respect to an individual,  is defined as: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being

regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiffs' disability status has not been challenged by defendants. For purposes of this motion, the Court will accept that plaintiffs are disabled as defined under the ADA. Defendants have asserted that the ADA claims should be dismissed for multiple reasons.

Defendants DHS and DCH move to dismiss the complaint because plaintiffs have simply alleged that they were denied services after the defendants informed them that plaintiffs were too "rich" to receive benefits. It is not clear exactly what defendant DHS denied the plaintiffs. The Court assumes that plaintiffs sought some type of disability benefits from the DHS, but the benefits were denied. A denial of benefits because the plaintiffs' are considered "rich" is not a basis to support an ADA claim. Further, it seems unlikely that a person could state an ADA claim by asserting that they were denied disability benefits because they were disabled. Being disabled certainly is a precondition to receiving disability benefits.

Defendants DHS and DCH are entitled to immunity under the Eleventh Amendment. The Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections). The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Sixth Circuit has ruled that the Eleventh Amendment bars a civil rights action to the extent that it relied on congressional enforcement of equal protection in non-employment ADA cases. *Popovich v. Cuyahoga Court of Common Pleas*, 276 F.3d 808 (6th Cir. 2002) (en banc). Plaintiffs have not shown that the Legislature or the State has waived Eleventh Amendment immunity for this type of ADA claim.

- 7 -

Defendants Plotezka and Alger-Marquette Community Action Board argue that they are entitled to summary judgment because they are not public entities as defined by the Act. 42 U.S.C. § 12131 defines public entities as any State or Local government, department, agency, special purpose district, other instrumentality of a State or States or local governments; and the National Railroad Passenger Corporation, and any commuter authority of the Rail Passenger Service Act. Defendant Alger-Marquette Community Action Board is a private, non-profit corporation and defendant Plotezka is an individual. *Key v. Grayson*, 163 F. Supp.2d 697, 715 (E.D. Mich. 2001) (following great weight of authority holding that individuals cannot be liable under Title II of the ADA); *Calloway v. Boro of Glassboro Dept. of Police*, 89 F. Supp.2d 543, 557 (D. N.J. 2000) (collecting decisions of the Eighth Circuit and various district courts holding that individuals cannot be liable under the ADA). Neither of these defendants are public entities. In the opinion of the undersigned, defendants Alger-Marquette Community Action Board and defendant Plotezka are entitled to dismissal.

Similarly, plaintiffs have failed to establish that defendant UPPCO could be considered a public entity under the Act. Defendant UPPCO claims that its only involvement is to provide electrical power to plaintiffs' home and to maintain a utility pole on plaintiffs' property. It is not clear why plaintiffs have named UPPCO as a defendant. UPPCO argues that plaintiffs have failed to state a claim against them by merely alleging that an ADA violation occurred. Plaintiffs have failed to show that defendant UPPCO has any involvement other than simply providing electrical power and maintaining a utility pole. In the opinion of the undersigned, defendant UPPCO is entitled to dismissal from this action.

Defendant Marquette County Resource Management moves to dismiss the complaint against them because they are not a separate legal entity capable of being sued. Defendant argues

that they are simply a department within Marquette County. *Vine v. County of Ingham*, 884 F. Supp. 1153, 1158 (W.D. Mich. 1995) (citing *Hughson v. County of Antrim*, 707 F. Supp. 304, 306 (W.D. Mich. 1988), and *Bayer v. Almstadt*, 29 Mich. App. 171, 175, 185 N.W.2d 40, 44 (1970)). However, as a department of local government, defendant Marquette County Resource Management is a public entity as defined by the Act. The Court in the previous decision deliberately did not dismiss defendant Marquette County Resource Management under this legal theory on plaintiff's ADA claim. However, it does appear that plaintiffs have failed to set forth any actionable claim against Marquette County Resource Management. Marquette County employee Steven Enright has been dismissed by the Court. Plaintiffs have not explained how Marquette County Resource Management could have violated plaintiffs' rights under the ADA. In the opinion of the undersigned, Marquette County Resource Management should be dismissed from this action.

Plaintiffs have two motions for injunction (Docket #21 and #43) alleging that defendant DHS has lied to them by sending them a letter stating it is from the Family Independent Agency. It is against plaintiff's "religious beliefs to be assaulted with lies." DHS has refused to comply with a disability decision and discriminates against Cheryl because the plaintiffs are married. Plaintiffs want defendant DHS to pay their medical bills. Plaintiffs have also filed a motion for a restraining order against state and local governments (Docket #66) because everyone changes the rules and what they previously told the plaintiffs. In addition plaintiff Cheryl Zibbell would like her inheritance from Donald A. Witt and mineral rights that were promised to her involving a Mt. Pleasant campground.

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987). In exercising that discretion, the court must consider and balance four factors:

1.  Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.

2.  Whether the movant has shown irreparable injury.

3.  Whether the preliminary injunction could harm third parties.

4.  Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994).  These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers.  *Id.*

Plaintiffs have not established a strong or substantial likelihood of success on the merits of their action.  In the opinion of the undersigned, plaintiffs' claims should be dismissed. Further, plaintiffs have not shown irreparable injury that would require the drastic remedy of injunctive relief.  Plaintiff's motions for injunctive relief should be denied.

Plaintiffs have filed a request for direction from the Court (Docket #30).  Plaintiffs allege that non-defendant United States Department of Agriculture -Rural Development and Keith Greenwald, who have not been served with a summons and complaint, denied plaintiffs a loan request in 1999.  Plaintiff's request that the Court inform them how they can get state money and a loan for a house.  The Court does not advise parties on how to proceed in litigation.  The Court must maintain a detached and neutral relationship with the parties.  In the opinion of the undersigned, plaintiffs' motion should be denied.  Similarly, plaintiffs ask the Court to declare their home a loss. Plaintiff's motion (Docket #83) should be denied.

Plaintiffs have filed motions for default judgment (Docket #54 and #126) against defendants.  Plaintiffs believe that a default judgment should be entered because defendants should not have any more time to prolong plaintiffs' misery.  There has not been an entry of default in this

- 10 -

case.  Entry of default is required before default judgment may be entered.  Entry of default is not appropriate.  It is recommended that the motions for default judgment be denied.

Plaintiffs have filed motions to serve the Michigan Department of Labor and Economic Growth and Marquette County (Docket #87 and # 118).  Leave to amend a complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality."  *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995).  The court may deny leave to amend a complaint where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile.  *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1354 (1996).  Plaintiffs have not stated how these prospective defendants could have possibly violated the ADA.  Plaintiffs allege that they were denied funds owed to them because of their disabilities.  The denial of funds, according to plaintiffs' belief, was somehow due to their disabilities.  Conversely, according to plaintiffs, it is their disabilities that entitle them to the funds.  There exists nothing in the pleadings that could possibly justify an ADA action against these defendants for an alleged denial of funds.

Plaintiffs have filed a motion to disqualify the law firm of Garan, Lucow, Miller, P.C., from representing defendant UPPCO (Docket #115).  Plaintiffs assert that they made a telephone call to attorney Sean Fosmire of Garan, Lucow, Miller, P.C., seeking representation for their ADA claims, and providing attorney Fosmire with information regarding their claims.  Plaintiff also had some business dealings with Heikkila Window and Construction.  Plaintiffs maintain that Heikkila Window and Construction refused to provide an estimate on plaintiffs' home for alleged damage caused by UPPCO.  Plaintiffs state that this is not normal business practice.  Attorney John Heikkila works at Garan, Lucow, Miller, P.C., and is representing UPPCO in this action.  Plaintiffs

argue that attorney Heikkila is somehow involved with Heikkila Window and Construction. Attorney Heikkila has represented to this Court that he has no relationship with Heikkila Window and Construction. He is not an owner or knowingly related with the owner of Heikkila Window and Construction. Further, in plaintiffs' attempt to find an attorney to represent them, they apparently made a number of contacts with various law firms and attorneys. Eventually, they had telephone contact with attorney Fosmire. Attorney Fosmire attests that he has a recollection of an unnamed caller who telephoned him about a Medicare case. Plaintiffs dispute that the call was about Medicare and assert it was about this ADA action. The telephone call lasted approximately two minutes and Fosmire referred the caller to another attorney outside his firm who handles Medicare issues. Under these circumstances, it is the opinion of the undersigned that the law firm of Garan, Lucow, Miller, P.C., should not be disqualified from representing defendant UPPCO in this case.

Accordingly, it is recommended that the motions to dismiss filed by defendants Michigan Department of Community Mental Health and Michigan Department of Human Services (Docket #60), Upper Peninsula Power Company (Docket #94), and Marquette County Resource Management (Docket #107), and the motion for summary judgment filed by defendants Alger-Marquette Community Action Board and Marvin Plotezka (Docket #91) be GRANTED and this case be DISMISSED.

It is further recommended that plaintiffs' motion for summary judgment (Docket #38), request for direction from the Court (Docket #30), motions for preliminary injunction (Docket #21 and #43), motions for default judgment (Docket #54 and #126), motion for restraining order (Docket #66), motion for order to declare loss (Docket #83), motions to serve parties (Docket #87 and #118), motion to disqualify (Docket #115), motion to strike (Docket #135), and motion to expedite decision (Docket #137) be DENIED.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley                                  
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  March 19, 2008